Charles C. COHN, Samuel L. Cohn and Samuel L. Cohn and Charles C. Cohn, a Partnership, doing business as Colonial Alloys Company, Plaintiffs,

v.

COMMISSIONER OF PATENTS, Defendant.

Civ. A. No. 181–64.

United States District Court
District of Columbia.

Feb. 11, 1966.

William A. Smith, Jr., Smith, Michael, Bradford & Gardiner, Washington, D. C., George J. Harding, III, George A. Smith, Busser, Smith & Harding, Philadelphia, Pa., for plaintiffs.

Joseph Schimmel, Acting Sol., S. William Cochran, Washington, D. C., of counsel, for defendant.

JACKSON, District Judge.

This is a civil action under 35 U.S.C. § 145 in which the plaintiffs, Charles C. Cohn, Samuel L. Cohn, and Samuel L. Cohn and Charles C. Cohn, a partnership doing business as Colonial Alloys Company, seek to have the Court adjudge that they are entitled to receive a patent for the invention specified in Claims 33 to 42 of the patent application of Charles C. Cohn, Serial No. 836,056, filed August 26, 1959, entitled "Treatment of Coatings."

The application in suit relates to a multiple step method of providing aluminum oxide coated aluminum with practical resistance to alkali corrosion comprising a first treatment with a hot

aqueous hydrolyzable solution of a salt of a weak metallic base, such as nickel acetate, and a second treatment with a hot aqueous silicate solution.

The Tosterud patent, No. 2,008,733, discloses a process for treating oxide coated aluminum surfaces comprising a first treatment with sodium silicate, which is said to "increase the corrosion resistance of the coating," and a second treatment by immersion in an aqueous solution of a salt of a weak metallic base, such as nickel acetate.

Treatment of oxide coated aluminum surfaces with silicate solution was known, before Charles C. Cohn devised the claimed method, to provide effective resistance to acid and salt corrosion and to provide somewhat better protection against alkali corrosion than other treatments. It was also known that the silicate treatment could not be used on dyed oxide coated surfaces because it would remove the dye. Those skilled in the art had the further knowledge that, when a silicate is used in sealing oxide coated aluminum surfaces, the silicate not only enters the pores but forms a coating on the surface as well.

Treatment of oxide coated aluminum surfaces with a solution of nickel acetate was known, before Charles C. Cohn devised the claimed method, to provide effective resistance to corrosion by acids and salt. It was also known that the nickel acetate treatment would increase the ability of a dyed oxide coating to retain color under the action of solvents.

It would have been obvious to those ordinarily skilled in the metal finishing art that, in a process for sealing dyed oxide coated aluminum involving treatments both in a silicate solution and a nickel acetate solution, the nickel acetate treatment should precede the silicate treatment. It would have been obvious, therefore, to reverse the sequence of steps disclosed by the Tosterud patent when sealing dyed surfaces, in order to avoid removal of the dye by the silicate.

It would have been obvious to those ordinarily skilled in the metal finishing art that, in a two step sealing process in-volving a silicate treatment and an acetate sealing treatment, using the silicate treatment last would be the more effective sequence for increasing corrosion resistance because the silicate treatment was known to apply a protective coating to the surface, although using the acetate sealing treatment last might be more effective for sealing purposes alone.

The differences between the subject matter of Claims 33 to 41 of the application in suit and the prior art are such that the subject matter as a whole would have been obvious, at the time Charles C. Cohn devised his claimed method, to a person having ordinary skill in the metal finishing art.

The word "hot," as used in describing the temperatures of the solutions in Claims 33 to 42 of the application in suit, means, in its broadest sense, "having a relatively high temperature."

Although the word "hot" is not inherently indefinite as applied to chemical solutions, since it would connote to a person skilled in the art the meaning that the solutions were heated to a temperature anywhere in the range from room temperature (about 70° F.) to boiling temperatures of the solutions, plaintiff Charles C. Cohn introduced a zone of uncertainty in this case by his trial testimony that "hot" connotes a temperature over body temperature (about 100° F.), and normal human body temperatures have nothing to do with the chemical solutions involved in this case. Therefore the word "hot" in Claims 33 to 42 is indefinite, according to the facts of this case.

■ It is obvious and unpatentable under the provisions of 35 U.S.C. § 103 to reverse the sequence of steps in a known process when the prior art clearly suggests that there would be an advantage in the reversed sequence. Claims 33 to 41 of the application in suit are, accordingly, obvious and unpatentable under 35 U.S.C. § 103. See In re Welter, 255 F.2d 944, 45 CCPA 1034 (1958).

■ Claims 33 to 42, which all include the indefinite term "hot", are un-

patentable under the provisions of 35 U.S.C. § 112. See In re Edwards, 285 F.2d 811 (CCPA 1961).

Plaintiffs are not entitled to a patent containing any of Claims 33 to 42 of the patent application of Charles C. Cohn, Serial No. 836,056, filed August 26, 1959.

The Complaint should be dismissed.